UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| DR. ROSA COCA<br>2132 Hayden Drive<br>Johnstown, PA 15905<br><br>*Plaintiff,*<br><br>v.<br><br>R80, LLC<br>*Serve*: Corporation Service Company<br>100 Shockoe Slip<br>Floor 2<br>Richmond, VA 23219<br><br>PDR OPERATING WBV, LLC<br>d/b/a Persona Doctors (Prince William Co)<br>*Serve*: RALS VA, LLC<br>7288 Hanover Green Drive<br>Mechanicsville, VA 23111<br><br>PERSONA DOCTORS, LLC<br>*Serve*: Roger C. Samek, Esq.<br>2000 Tower Oaks Boulevard<br>Suite 440<br>Rockville, MD 20852<br><br>Kavan Shaban<br>8120 Woodmont Avenue<br>Suite 180<br>Bethesda, MD 20814<br><br>Shawn Shaban<br>13811 Bison Court<br>Silver Spring, MD 20906<br><br>*Defendants.* | CIVIL ACTION NO:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Dr. Rosa Coca ("Dr. Coca" or "Plaintiff"), by and through undersigned counsel, files this Complaint against Defendants, r80, LLC ("r80"), PDR Operating WBV, LLC d/b/a

Persona Doctors (Prince William Co) ("WBV"), Persona Doctors, LLC ("Persona") Kavan Shaban, and Shawn Shaban (collectively "Defendants") alleging claims of violations of the Fair Labor Standards Act, the Virginia Minimum Wage Law, the Virginia Wage Payment Act, and common law fraud and breach of contract.

## JURISDICTION AND VENUE

1.	This Court has original jurisdiction over the claims pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the laws of the United States.

2.	This Court has diversity jurisdiction over the claims pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states.

3.	This Court has supplemental jurisdiction over the Virginia state law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same case or controversy as Plaintiff's federal claims.

4.	This Court has personal jurisdiction over Defendant because Defendant conducts business throughout this judicial district.

5.	Venue is proper in this Court because Defendant's principal place of business is within this judicial district.

## PARTIES

6.	Plaintiff, Dr. Rosa Coca, is a woman and medical doctor who resides in the State of Pennsylvania.

7.	Defendant, r80 is a limited liability company formed in the State of Delaware with a Principal Office Address of 8120 Woodmont Avenue, Suite 180, Bethesda, MD 20814. r80 is an unregistered foreign corporation in the Commonwealth of Virginia, that operates numerous offices throughout the Commonwealth, including in Woodbridge, VA and Fairfax City, VA.

8. Defendant WBV is a limited liability company formed in the Commonwealth of Virginia with a Principal Office Address of 12701 Marblestone Drive, Suite 140, Woodbridge, VA 22192.

9. Defendant Persona is a limited liability company formed in the State of Maryland with a Principal Office Address of 11400 Rockville Pike, Suite 608, Rockville, MD 20852.

10. Defendant Kavan Shaban ("Mr. K. Shaban") is a domiciliary of the State of Maryland residing at 8120 Woodmont Avenue, Suite 180, Bethesda, MD 20814. Upon information and belief, the corporate structure of r80, WBV, and Persona Doctors, LLC, was used by Mr. K. Shaban to shield himself from personal liability and to avoid financial obligations, warranting piercing of the corporate veil as more fully set forth below.

11. Defendant Shawn Shaban ("Mr. S. Shaban") is Mr. K. Shaban's brother, and a domiciliary of the State of Maryland residing at 13811 Bison Court Silver Spring, MD 20906. Upon information and belief, Mr. S. Shaban was the retirement plan administrator and trustee of the Retirement Plan in which Dr. Coca participated and engages in his duties at the Persona place of business.

12. At all times relevant to the facts alleged in this lawsuit, Dr. Coca was employed by Defendants.

## STATEMENT OF FACTS

13. In May 2011, Dr. Coca began her employment with Defendants.

14. Dr. Coca began as a Provider before being promoted to Senior Provider.

15. In her role, Dr. Coca conducted wellness meetings with Defendants' clients, prescribed wellness plans for those clients, and monitored the long-term progression towards the clients' goals.

16. On or around April 2, 2019, Dr. Coca signed a "Physician Employment Agreement" (the "Agreement") with Defendant Persona.[1]

17. In this Agreement, Persona was designated as the "Employer," and sought to engage Dr. Coca's services as a Managing Physician "by and/or through is affiliated entities" to work primarily at their Woodbridge, Virginia location.[2]

18. The Agreement specified a two (2) year term, with extension made by mutual written agreement of the parties.[3]

19. Despite Defendants not providing a written agreement that extended the initial Agreement at the expiration of the two-year term, Dr. Coca was still expected to perform her duties as Managing Physician, and Defendants continued to pay her for her services as they had done under the Agreement.

20. The Agreement specified that Dr. Coca's compensation rates were as follows:

a) Weekday Clinic Hours: $95.00 per hour

b) Weekend Clinic Hours: $125.00 per hour

c) Pre-7am Clinic Hours: $125.00 per hour

d) Non-Clinic Hours: $50.00 per hour.[4]

21. The Agreement also provided a Revenue Sharing Plan that provided Dr. Coca with two percent (2%) of the monthly Patient Service Agreement ("PSA") revenues from the Woodbridge, VA location above a Minimum Revenue Threshold of $115,000 per month.[5]

22. The Agreement could be terminated by Defendants at any time upon written notice

---

[1] See Ex. A, Physician Employment Agreement.
[2] Id. at 1.
[3] Id., §5.
[4] Id., §6.
[5] Id., §6.

with or without Cause.[6]

23. However, if Defendants terminated Dr. Coca without Cause, she would be entitled to a Severance payout based on the formula provided by the Agreement.

24. Dr. Coca continued her employment with Defendants primarily at the Woodbridge, VA location, but also saw clients from other locations in Virginia and Maryland.

25. On or around September 8, 2020, Dr. Coca was provided an Employment Handbook by Defendant r80. Purportedly, this was due to the Defendants' commingling of their respective workforces. The handbook included no language that waived or nullified the Defendants' obligations under the Agreement.

26. In or around May 2021, Dr. Coca relocated to her current residence in Pennsylvania. The Defendants continued her employment, allowing her to provide services to clients via Telehealth appointments.

27. In December 2024, Dr. Coca took five (5) days of paid time off to travel with her husband to Puerto Rico to visit family following her mother's passing.

28. On or about December 19, 2024, Dr. Coca was directed by John Hoelscher ("Mr. Hoelscher"), Defendants' Revenue Marketing Manager, via a Microsoft Teams message to "log off company systems and do not see any patients or write any prescriptions until we are able to discuss this situation in full."[7]

29. Not knowing what "situation" Mr. Hoelscher was referring to, Dr. Coca called him to gain better understanding. Mr. Hoelscher would not provide any specific details but stated that he had to meet with the Drug Enforcement Agency ("DEA") on December 31, 2024, and that she

---

[6] Id., §14.
[7] See Ex. B, Microsoft Teams Message.

would be placed on paid administrative leave until that meeting occurred and Mr. Hoelscher could provide her with an update.

30. On January 2, 2025, Mr. Hoelscher met with Mrs. Coca via telephone regarding her employment status. During this conversation Mr. Hoelscher terminated Dr. Coca's employment. When asked for a reason, Mr. Hoelscher blamed Defendants' financial struggles, stating they could no longer afford to pay her.

31. Dr. Coca subsequently requested payment of her final paycheck along with the severance amount specified in her employment contract. Mr. Hoelscher informed her that the Defendants would deposit her final paycheck in her account via direct deposit, but it would not honor the severance provision of the employment contract, citing financial difficulties.

32. However, Defendants never deposited her final paycheck. The last paycheck Dr. Coca received was deposited on December 6, 2024, nearly one month before her employment was terminated on January 2, 2025, despite her continued service and accrued paid time during that period.

33. Shortly thereafter, Dr. Coca applied for social security benefits. It was at that time that she learned that although Defendants had made typical deductions for Social Security taxes from her paychecks to pay into the Social Security system.

34. Upon information and belief, the Defendants had not paid into the Social Security system on her behalf for years 2019 through 2021.

**Piercing the Corporate Veil**

35. At all times relevant to this Complaint, Mr. K. Shaban exercised complete control over r80, WBV, and Persona Doctors, LLC, such that the companies operated as his alter egos rather than separate entities. Under Virginia law, the corporate veil may be pierced when a

shareholder exerts such complete control over a corporation that it has no independent existence and is used to commit a fraud, injustice, or wrongful act. O'Hazza v. Executive Credit Corp., 431 S.E.2d 318, 320 (Va. 1993).

36. Specifically, Mr. K. Shaban:

a. Used his personal address, 8120 Woodmont Avenue, Suite 180, Bethesda, MD 20814, as the principal place of business for both r80 and Persona Doctors, LLC, reflecting a lack of separation between the entities and their owner;

b. Failed to observe corporate formalities, including maintaining separate finances for each entity, and commingled corporate and personal assets, blurring the line between his personal affairs and the business operations;

c. Grossly undercapitalized the entities, preventing them from meeting their financial obligations independently, suggesting they were mere shells used to shield him from personal liability, and provide him direct access to the entities revenues for personal gain; and

d. Perpetuated fraud or injustice by avoiding contractual obligations, including Dr. Coca's severance and final wages, in violation of Virginia and federal law.

37. Given this disregard for corporate formalities and misuse of the corporate form, piercing the corporate veil is necessary to prevent injustice and hold Mr. K. Shaban personally liable for the wrongful acts alleged in this Complaint.

## CAUSES OF ACTION

### COUNT I
**Violation of the Fair Labor Standards Act ("FLSA")**
**29 U.S.C. § 201 *et seq.***
(Failure to Pay Federal Minimum Wage)

38. Dr. Coca re-alleges and incorporates by reference paragraphs 13 through 37 as fully set forth herein.

39. The Fair Labor Standards Act ("FLSA"), codified at 29 U.S.C. § 201, *et seq.*, provides, at § 206, that "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates: (1) except as otherwise provided in this section, not less than . . . $7.25 an hour, beginning 24 months after that 60th day." 29 U.S.C. §206(C).

40. As Defendants have not paid Dr. Coca any of her earned wages for her last paycheck, Defendants have failed to pay Dr. Coca federal minimum wage for all time worked, in violation 29 U.S.C. § 206.

41. 29 U.S.C. § 216(b) provides that "[a]ny employer who violated the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount in liquidated damages." Further, "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." Id.

42. Despite Dr. Coca providing the services outlined in the Agreement for part of December 2024 and taking five (5) days of personal time off (PTO) for the remaining days, Defendants did not pay Dr. Coca any wages for eleven (11) workdays and five (5) PTO days. Defendants also failed to pay Dr. Coca the paid administrative leave from December 19, 2024, until they terminated her employment on January 2, 2025, resulting in twenty-eight (28) days for which she was not paid.

43. As a direct and proximate result of Defendants' violations of the FLSA, Plaintiff has suffered lost wages equating to no less than $1624.00 in unpaid minimum wages.

44. Under the FLSA, Defendants are required to pay Dr. Coca an equal amount as a liquidated damage and reasonable costs and attorneys' fees.

**COUNT II**
**Violation of the Virginia Minimum Wage Act ("VMWA")**
**Va. Code §40.1-28.10**
(Failure to Pay Virginia Minimum Wage)

45. Dr. Coca re-alleges and incorporates by reference paragraphs 13 through 37 as fully set forth herein.

46. Virgina law requires that employers pay their employees no less than $12.00 per hour. Va. Code §40.1-28.10(D).

47. Employers who fail to pay Virginia minimum wages are liable to the employee for the unpaid amount, plus eight percent interest annually. Va. Code §40.1-28.12. The court may also order the employer to pay reasonable attorneys' fees to the employee.

48. Despite Dr. Coca providing the services outlined in the Agreement for part of December 2024 and taking five (5) PTO for the remaining days, Defendants did not pay Dr. Coca any wages for eleven (11) workdays and five (5) PTO days. Defendants also failed to pay the paid administrative leave from December 19, 2024, until they terminated her employment on January 2, 2025, resulting in twenty-eight (28) days for which she was not paid.

49. As a direct and proximate result of Defendants' violations of the VMWA, Plaintiff has suffered lost wages equating to no less than $2,688.00 in unpaid minimum wages.

50. Under the VMWA Defendants are required to pay Dr. Coca and the unpaid wages and may be ordered to pay Dr. Coca's reasonable attorneys' fees.

## COUNT III
### Violation of the Virginia Wage Payment Act ("VWPA")
### Va. Code §40.1-29(A)
(Failure to Pay Wages)

51. Dr. Coca re-alleges and incorporates by reference paragraphs 13 through 37 as fully set forth herein.

52. Under Virginia law, all employers operating in Virgina shall pay non-executive, salaried employees at least once a month, and hourly employees at least once every two weeks or twice a month. *See* Va. Code §40.1-29(A). The employer must pay a terminated employee all wages or salaries due to him on or before the next scheduled pay date. Id.

53. Any employer who fails to make payments in accordance with subsection (A) is liable to the employee for payment of all wages due, an equal amount as liquidated damages, interest accruing from the date the wages were due, and reasonable attorney fees and costs. *See* Va. Code §40.1-29(G).

54. Although Defendants terminated Dr. Coca's employment on January 2, 2025, the final paycheck she received was deposited on December 6, 2024, nearly a month prior.

55. Defendants were required to pay Dr. Coca's final paycheck no later than the next pay date, or January 6, 2025.

56. When Dr. Coca sought her final paycheck, Mr. Hoelscher advised that Defendants would pay it on the next pay date; Defendants then refused to do so.

57. As a direct and proximate result of Defendants' violations of the Virginia Wage Payment Act, Plaintiff has suffered lost wages equating to no less than $22,240.00.

58. Under the VWPA, Defendants are required to pay Dr. Coca in damages no less than $44,480.00, interest thereon, and reasonable costs and attorneys' fees.

## COUNT IV
**Violation of the Virginia Wage Payment Act ("VWPA")**
**Va. Code §40.1-29(A)**
(Failure to Pay Severance Wages)

59. Dr. Coca re-alleges and incorporates by reference paragraphs 13 through 37 and 51 through 52 as fully set forth herein.

60. Defendants terminated Dr. Coca's employment Not for Cause on January 2, 2025.

61. During that time, Dr. Coca's 2019 Physicians Employment Agreement was in force at the time of her termination.

62. The Agreement provides that if Dr. Coca was terminated Not for Cause, Defendants must pay her a Severance Payment.

63. According to the Agreement, Dr. Coca was owed a Severance Payment of $12,000 at the time of her termination.

64. As the Severance Payment would be treated as a wage under the VWPA, Defendants were required to pay it no later than the next pay date, or January 6, 2025.

65. When Dr. Coca requested that she be paid the Severance Payment, Mr. Hoelscher advised that Defendants were unwilling to pay the amount owed.

66. Under the VWPA, Defendants are required to pay Dr. Coca no less than $24,000.00, interest thereon, and reasonable costs and attorneys' fees.

## COUNT V
**Violation of the Virginia Wage Payment Act ("VWPA")**
**Va. Code §40.1-29(A)**
(Failure to Pay Wages under the Revenue Sharing Plan)

67. Dr. Coca re-alleges and incorporates by reference paragraphs 13 through 37 and 51 through 52 as fully set forth herein.

68. Upon information and belief, Defendant's Woodbridge location regularly exceeded

the Minimum Revenue Threshold of $115,000 per month.

69. Despite the Agreement's terms, Defendants did not pay Dr. Coca under the Revenue Sharing Plan during her tenure when the Agreement was in force.

70. As a direct and proximate result of Defendants' violations of the Virginia Wage Payment Act, Plaintiff has suffered lost wages that she would have earned under the Revenue Sharing Plan.

71. Under the VWPA, Defendants are required to pay Dr. Coca damages in an amount to be proven at trial, interest thereon, and reasonable costs and attorneys' fees.

## COUNT VI
**Violation of the Virginia Wage Payment Act ("VWPA")**
**Va. Code §40.1-29(C)**
(Failure to Pay Wages)

72. Dr. Coca re-alleges and incorporates by reference paragraphs 13 through 37 as fully set forth herein.

73. The VWPA states that other than those withholdings required by law, no employer shall withhold any part of the wages or salaries of any employee without that employees written and signed authorization. Va. Code §40.1-29(C).

74. When an employee fails to pay wages to an employee as required, that employee may bring an action for such failure. In those instances, the court shall award wages owed, an additional equal amount as liquidated damages, prejudgment interest, and reasonable attorney fees and costs. For knowing failures to pay wages, the employer must pay the employee treble damages. *See* Va. Code §40.1-29(J).

75. Although Defendants terminated Dr. Coca's employment on January 2, 2025, the final paycheck she received was deposited on December 6, 2024, nearly a month prior.

76. Defendants were required to pay Dr. Coca's final paycheck no later than the next

pay date, or January 6, 2025.

77. When Dr. Coca sought her final paycheck, Mr. Hoelscher advised that Defendants would pay it on the next pay date; Defendants then refused to do so.

78. Defendants knowingly failed to pay Dr. Coca's final month of wages, including paid time off and paid administrative leave.

79. As a direct and proximate result of Defendants' violations of the Virginia Wage Payment Act, Plaintiff has suffered lost wages equating to no less than $22,240.00.

80. Under the VWPA, Defendants are required to pay Dr. Coca in damages no less than $66,720.00, interest thereon, and reasonable costs and attorneys' fees.

## COUNT VII
**Violation of the Virginia Wage Payment Act ("VWPA")**
**Va. Code §40.1-29(C)**
(Failure to Pay Severance Wages)

81. Dr. Coca re-alleges and incorporates by reference paragraphs 13 through 37 and 73 through 74 as fully set forth herein.

82. Defendants terminated Dr. Coca's employment Not for Cause on January 2, 2025.

83. Dr. Coca's 2019 Physicians Employment Agreement was in force at the time of her termination.

84. The Agreement provides that if Dr. Coca was terminated Not for Cause, Defendants must pay her a Severance Payment.

85. According to the Agreement, Dr. Coca was owed a Severance Payment of $12,000 at the time of her termination.

86. As the Severance Payment would be treated as a wage under the VWPA, Defendants were required to pay it no later than the next pay date, or January 6, 2025.

87. When Dr. Coca requested that she be paid the Severance Payment, Mr. Hoelscher

13

advised that Defendants would not pay it.

88. Defendants knowingly failed to pay Dr. Coca's Severance Payment.

89. Under the VWPA, Defendants are required to pay Dr. Coca no less than $36,000.00, interest thereon, and reasonable costs and attorneys' fees.

## COUNT VIII
### Violation of the Virginia Wage Payment Act ("VWPA")
### Va. Code §40.1-29(C)
(Failure to Pay Wages under the Revenue Sharing Plan)

90. Dr. Coca re-alleges and incorporates by reference paragraphs 13 through 37 and 73 through 74 as fully set forth herein.

91. Upon information and belief, Defendant's Woodbridge location regularly exceeded the Minimum Revenue Threshold of $115,000 per month.

92. Despite the Agreement's terms, Defendants did not pay Dr. Coca under the Revenue Sharing Plan during her tenure when the Agreement was in force.

93. Defendants knowingly failed to pay Dr. Coca in accordance with the Revenue Sharing Plan.

94. Under the VWPA, Defendants are required to pay Dr. Coca Dr. Coca damages in an amount to be proven at trial, interest thereon, and reasonable costs and attorneys' fees.

## COUNT IX
### Violation of 26 U.S.C. §7434

95. Dr. Coca re-alleges and incorporates by reference paragraphs 13 through 37 as fully set forth herein.

96. Under 26 U.S.C. § 7434(a), it is unlawful to willfully file a fraudulent information return with respect to payments purported to be made to another person. An individual affected by such a filing may bring a civil action for damages against the person who submitted the false return.

97.     When reporting information returns to the Internal Revenue Service, Defendants must provide accurate information regarding the amount of Social Security taxes withheld for the purpose of paying into the Social Security system.

98.     Defendants willfully filed a fraudulent information report with regard to the amount of Social Security tax that was withheld and paid into the Social Security system on behalf of Dr. Coca.

99.     As a proximate result of this willful fraudulent filing, Dr. Coca has suffered damages in the amount of $24,466.82, and as a result, Dr. Coca is permitted to bring a civil suit. The Defendants are required to recover the greater of $5,000 in statutory damages, or the actual damages sustained as a result of the fraudulent filing.

## COUNT X
## Breach of Contract

100.    Dr. Coca re-alleges and incorporates by reference paragraphs 13 through 37 as fully set forth herein.

101.    Under Virginia law, a breach of contract occurs when (1) a legally enforceable obligation exists between the parties, (2) the defendant fails to perform that obligation, and (3) the plaintiff suffers damages as a result. Evans v. Truist Bank, 77 Va. App. 140, 148 (2023); Clevert v. Jeff W. Soden, Inc., 241 Va. 108, 111 (1991).

102.    The Agreement was put in force on April 2, 2019.

103.    Despite Defendants not providing a written agreement that extended the initial Agreement at the expiration of the two-year term, Dr. Coca was still expected to perform her duties and Managing Physician, and Defendants continued to pay her for her services as they had done under the Agreement.

104.    The Agreement, therefore, was an implied contract between Dr. Coca and

Defendants that renewed each year on April 2nd. The terms and conditions of the Agreement were similarly implied.

105. Defendants breached that contract when they knowingly refused to pay Dr. Coca her final month of wages, including PTO.

106. Defendants again breached that contract when they knowingly refused to pay the Severance Payment to which she was entitled.

107. Finally, Defendants breached the contract with the knowingly refused to pay Dr. Coca under the Revenue Sharing Plan.

108. As a direct and proximate result of Defendants' breach and failure to honor its promises, Dr. Coca suffered damages in the form of lost wages in an amount no less than $34,240.00 between the failure to pay her final month of wages and Severance Payment.

## COUNT XI
## Common Law Fraud

109. Dr. Coca re-alleges and incorporates by reference paragraphs 13 through 37 as fully set forth herein.

110. Common law fraud consists of (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance thereon by the party misled, and (6) resulting damage to the party misled. Owens v. DRS Auto. Fantomworks, Inc., 288 Va. 489, 497, 764 S.E.2d 256, 260 (2014).

111. Defendants made a false representation of material when they provided paystubs reflecting Social Security taxes were withheld from her paychecks to pay into the Social Security system.

112. This false representation was done with the intent to mislead Dr. Coca, as Defendants made her believe that the deductions were made to be paid into the Social Security

system, rather than to be impermissibly retained by Defendants for their benefit.

113. Dr. Coca relied on this misrepresentation to her detriment, as her Social Security benefits were reduced based on the impermissibly retained withholdings the believed had been paid into the Social Security system on her behalf.

114. As a direct proximate result of Defendants' intentionally false representation, Dr. Coca has suffered damages in the amount of $24,466.82.

### **PRAYER FOR RELIEF**

WHEREFORE, Dr. Coca respectfully requests that this Court enter judgment in her favor and against Defendants, and award the following relief:

a) Entry of judgment in favor of Plaintiff and against Defendants;

b) Award of compensatory damages for:

   i. $1624.00 for unpaid minimum wages under the FLSA;

   ii. $2,688.00 for unpaid minimum wages under the VMWA;

   iii. $12,000.00 for unpaid wages under subsection (A) of the VWPA;

   iv. $44,480.00 for unpaid severance wages under subsection (A) of the VWPA;

   v. $66,720.00 for unpaid wages and treble damages under subsection (C) the VWPA;

   vi. $36,000.00 for unpaid severance wages under subsection (C) the VWPA;

   vii. Damages in an amount to be proven at trial for the non-payment under the Revenue Sharing Plan;

   viii. $24,466.82 for damages as a result of violations of 26 U.S.C. §7434;

   ix. $34,240.00 for damages from breach of contract; and

   x. $24,466.82 for damages as a result of common law fraud.

c) Awarding pre- and post-judgment interest, costs, and disbursement as appropriate herein;

d) Award of reasonable attorneys' fees and litigation costs and expenses for Dr. Coca against Defendants; and

e) Any other relief that this Court deems equitable, appropriate, and just.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

*/s/ Francisco Mundaca*
Francisco E. Mundaca, Esq.
The Mundaca Law Firm, LLC
1997 Annapolis Exchange Pkwy
Suite 300
Annapolis, Maryland 21401
Phone: (202) 474-8500
Fax: (240) 233-8626
Email: fmundaca@mundacalaw.com

*Counsel for Dr. Rosa Coca*