IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| ROSA COCA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-939 (RDA/LRV) |
| | ) | |
| R80, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Defendant Kavan Shaban's Motion to Dismiss (Dkt. 27) and Defendant r80, LLC's ("r80") Motion to Dismiss (Dkt. 29) (collectively, the "Motions"). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter is fully briefed and ripe for disposition. Considering the Complaint (Dkt. 1), Defendants' Memoranda in Support (Dkts. 28, 30), Plaintiff's Oppositions (Dkts. 31, 32), and Defendant Shaban's Reply (Dkt. 38),[1] this Court GRANTS the Motions for the reasons that follow.

---

[1] Defendant r80 did not file a reply, and the time to do so has elapsed. *See* Local Civil Rule 7(F)(1).

## I. BACKGROUND

### A. Factual Background[2]

Plaintiff alleges that she began her employment with "Defendants" in May 2011.[3] Dkt. 1 ¶ 13. Plaintiff began as a Provider before being promoted to Senior Provider. *Id.* ¶ 14. In her role, Plaintiff conducted wellness meetings with Defendants' clients, prescribed wellness plans for those clients, and monitored the long-term progression towards the clients' goals. *Id.* ¶ 15.

On or around April 2, 2019, Plaintiff signed a Physician Employment Agreement (the "Agreement") with Defendant Persona, a Maryland LLC. *Id.* ¶¶ 9, 16. In the Agreement, Persona was designated as the "Employer," and sought to engage Plaintiff's services as a Managing Physician "by and/or through its affiliated entities" to work primarily at their Woodbridge, Virginia location. *Id.* ¶ 17. The Agreement specified a two (2) year term, with extension made by mutual written agreement of the parties. *Id.* ¶ 18. Despite Defendants not providing a written agreement that extended the initial Agreement at the expiration of the two-year term, Plaintiff was still expected to perform her duties as Managing Physician, and Defendants continued to pay her for her services as they had done under the Agreement. *Id.* ¶ 19. The Agreement specified that Plaintiff's compensation rates were as follows: weekday clinic hours ($95.00/hour), weekend clinic hours ($125.00/hour), pre-7am clinic hours ($125.00/hour), non-clinic hours ($50.00/hour). *Id.* ¶ 20. The Agreement also provided a revenue sharing plan that provided Plaintiff with two

---

[2] For purposes of considering the Motion to Dismiss, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[3] Defendants in this action are r80, LLC; PDR Operating WBV, LLC; Persona Doctors, LLC; Kavan Shaban; and Shawn Shaban. Throughout the Complaint, Plaintiff refers to "Defendants" without distinguishing between them. Accordingly, the Court recounts these general allegations as asserted.

percent of the monthly patient service agreement revenues from the Woodbridge, Virginia location above a minimum revenue threshold of $115,000 per month. *Id.* ¶ 21. The Agreement could be terminated by Defendants at any time upon written notice with or without cause. *Id.* ¶ 22. However, if Defendants terminated Plaintiff without cause, she would be entitled to a severance payout based on the formula provided by the Agreement. *Id.* ¶ 23.

Plaintiff continued her employment with Defendants primarily at the Woodbridge, Virginia location, but also saw clients from other locations in Virginia and Maryland. *Id.* ¶ 24.

On or around September 8, 2020, Plaintiff was provided an Employment Handbook (the "Handbook") by Defendant r80. *Id.* ¶ 25. Plaintiff alleges that, "[p]urportedly, this was due to Defendants comingling their respective workforces." *Id.* The Handbook included no language that waived or nullified Defendant's obligations under the Agreement. *Id.*

In or around May 2021, Plaintiff relocated to her current residence in Pennsylvania. *Id.* ¶ 26. Defendants continued her employment, allowing her to provide services to clients via Telehealth appointments. *Id.* ¶ 26.

In December 2024, Plaintiff took five days of paid time off to travel with her husband to Puerto Rico to visit family following her mother's passing. *Id.* ¶ 27.

On or about December 19, 2024, Plaintiff was directed by John Hoelscher, Defendants' Revenue Marketing Manager, via a Microsoft Teams message to "log off company systems and [to] not see any patients or write any prescriptions until we are able to discuss this situation in full." *Id.* ¶ 28. Not knowing what "situation" Hoelscher was referring to, Plaintiff called him to gain better understanding. *Id.* ¶ 29. Hoelscher would not provide any specific details but stated that he had to meet with the Drug Enforcement Agency ("DEA") on December 31, 2024, and that

3

she would be placed on paid administrative leave until that meeting occurred and Hoelscher could provide her with an update. *Id.*

On January 2, 2025, Hoelscher met with Plaintiff via telephone regarding her employment status. *Id.* ¶ 30. During this conversation, Hoelscher terminated Plaintiff's employment. *Id.* When asked for a reason, Hoelscher blamed Defendants' financial struggles, stating they could no longer afford to pay her. *Id.* Plaintiff subsequently requested payment of her final paycheck along with the severance amount specified in her employment contract. *Id.* ¶ 31. Hoelscher informed her that Defendants would deposit her final paycheck in her account via direct deposit, but it would not honor the severance provision of the employment contract, citing financial difficulties. *Id.* Defendants never deposited her final paycheck. *Id.* ¶ 32. The last paycheck Plaintiff received was deposited on December 6, 2024, nearly one month before her employment was terminated on January 2, 2025, despite her continued service and accrued paid time during that period. *Id.*

Shortly thereafter, Plaintiff applied for social security benefits. *Id.* ¶ 33. It was at that time that she learned that, although Defendants had made typical deductions for Social Security taxes from her paychecks to pay into the Social Security system, Defendants had not paid into the Social Security system on her behalf for years 2019 through 2021. *Id.* ¶¶ 33, 34.

### B.  Procedural Background

On June 3, 2025, Plaintiff filed her Complaint, asserting claims for (i) failure to pay minimum wage under the Fair Labor Standards Act ("FLSA"); (ii) failure to pay minimum wage under the Virginia Minimum Wage Act ("VMWA"); (iii) failure to pay regular wages under subsection (A) of the Virginia Wage Payment Act ("VWPA"); (iv) failure to pay severance wages under subsection (A) of the VWPA; (v) failure to pay wages under the revenue sharing plan under subsection (A) of the VWPA; (vi) failure to pay regular wages under subsection (C) of the Virginia

4

Wage Payment Act ("VWPA"); (vii) failure to pay severance wages under subsection (C) of the VWPA; (viii) failure to pay wages under the revenue sharing plan under subsection (C) of the VWPA; (ix) willfully filing a fraudulent information return with the Internal Revenue Service; (x) breach of contract; and (xi) common law fraud. Dkt. 1.

On October 17, 2025, Defendants Kavan Shaban and r80 filed their Motions to Dismiss and accompanying memoranda. Dkts. 27-30. On October 31, 2025, Plaintiff filed her Oppositions. Dkts. 31, 32. On November 6, 2025, Defendant Shaban filed his Reply. Dkt. 38.

## II. LEGAL STANDARD

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion, *see Goldfarb v. Mayor & City Council of*

5

*Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015), but they "may consider documents . . . attached to the motion to dismiss, as long as they are integral to the complaint and authentic[,]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

### III.  ANALYSIS

In the Motions, Defendants Shaban and r80 move to dismiss for several reasons.  The Court addresses the arguments as to each count in turn.

### A.  FLSA and VMWA (Counts I-II)

Defendants Shaban and r80 argue that the Court should dismiss Counts I and II of the Complaint under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the Virginia Minimum Wage Act, Va. Code § 40.1-28.10 ("VMWA"), because Plaintiff fails to allege facts sufficient to establish joint liability against these Defendants.  The FLSA and VMWA apply the same standards, accordingly the parties have addressed these claims together, and the Court will do so as well.  *See Hudson v. Dunn*, 2024 WL 2870845, at *5, 11 (E.D. Va. Mar. 15, 2024), *report and recommendation adopted,* 2024 WL 2866342 (E.D. Va. June 5, 2024).

As a preliminary matter, the Complaint largely engages in group pleading, alleging that various actions were taken by "Defendants."  Dkt. 1.  However, mere group pleading alone is insufficient to hold a defendant liable under joint employer or alter ego theories—the applicability of such theories must itself be supported by sufficient Defendant-specific, non-conclusory allegations.  *See E.E.O.C. v. La Rana Hawaii, LLC*, 888 F. Supp. 2d 1019, 1046 (D. Haw. 2012) (finding that the plaintiff could not group together defendants in pleading "theory of joint employer liability" under federal law and instead "must allege facts sufficient to [show how each defendant] controlled the terms and conditions" of the plaintiff's employment); *Horton v. NeoStrata Co. Inc.*, 2016 WL 11622008, at *3 (S.D. Cal. Nov. 22, 2016) (rejecting group pleading in the context of

conclusory alter ego liability allegations); *Terrell v. Samuel, Son & Co. (USA)*, 2020 WL 5372107, at *3 (C.D. Cal. Apr. 23, 2020) (rejecting group pleading of joint employers because the plaintiff's allegations were "entirely devoid of the necessary differentiation between Defendants to determine 'the totality of the working relationship of the parties,'" among other reasons).  Accordingly, the Court examines the relevant non-conclusory allegations as to Defendant Shaban's and Defendant r80's relationships with Persona under the relevant standards.

For both Defendants, Plaintiff relies on joint employer liability.  The Fourth Circuit has held that joint employment occurs when "two or more persons or entities are 'not completely disassociated' with respect to a worker such that the persons or entities share, agree to allocate responsibility for, or otherwise codetermine—formally or informally, directly or indirectly—the essential terms and conditions of the worker's employment." *Salinas v. Com. Interiors, Inc.*, 848 F.3d 125, 141 (4th Cir. 2017).  And the Fourth Circuit has provided a non-exhaustive list of factors to consider when answering this question:

> (1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;

> (2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;

> (3) The degree of permanency and duration of the relationship between the putative joint employers;

> (4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;

> (5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and

(6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

*Id.* at 141-42. Ultimately, the determination "must be based upon the circumstances of the whole activity." *Id.* at 142.

Here, the only non-conclusory facts alleged in the Complaint connecting Plaintiff's plausibly alleged employer, Defendant Persona, with r80 are that (1) "[o]n or around September 8, 2020, [Plaintiff] was provided an Employment Handbook by Defendant r80"; and (2) Defendant Shaban "[u]sed his personal address . . . as the principal place of business for both r80 and Persona." Dkt. 1 ¶¶ 25, 36a. Plaintiff does not allege that the Employment Handbook governed any of the essential terms and conditions of her employment. Indeed, she does not allege any of the Handbook's content or that she was required to follow any potential requirements contained therein. To the contrary, Plaintiff's allegations indicate that the Handbook did not modify the essential terms and conditions of Plaintiff's employment. *Id.* ¶ 25 ("The handbook included no language that waived or nullified the Defendants' obligations under the Agreement."). Although Plaintiff's allegations about the mutual connection to Defendant Shaban can be read to assert common ownership and a common principal place of business, when considered in light of the totality of the circumstances, including the Employment Agreement with Defendant Persona, Dkt. 1-1, the Court cannot find that Plaintiff's sparse allegations about a connection between Persona and r80 plausibly show that the two "share[d], agree[d] to allocate responsibility for, or otherwise codetermine[d]—formally or informally, directly or indirectly—the essential terms and conditions" of Plaintiff's employment. *Salinas*, 848 F.3d at 141.

In her Opposition, Plaintiff asserts for the first time that "R80 exercised direct and indirect control over Plaintiff's pay and payroll processing" and "issued employment-related documents." Dkt. 32 at 3. But "it is axiomatic that a Plaintiff may not amend her complaint through an opposition brief." *Oku v. Trumbull Ins. Co.*, 2026 WL 801263, at *3 (E.D. Va. Mar. 23, 2026). However, to the extent that Plaintiff can allege specific facts about the circumstances giving rise to these new assertions that would render her joint employment theory plausible, the Court will permit Plaintiff leave to amend.

Similarly, as to Defendant Shaban, in the Complaint, Plaintiff alleges only the following: (1) "Upon information and belief, the corporate structure of r80, WBV, and Persona Doctors, LLC, was used by [Defendant Shaban] to shield himself from personal responsibility and to avoid financial obligations," Dkt. 1 ¶ 10; (2) Defendant Shaban "exercised complete control over r80, WBV, and Persona Doctors, LLC, such that the companies operated as his alter egos rather than separate entities," *id.* ¶ 35; (3) Defendant Shaban "used his personal address . . . as the principal place of business for both r80 and Persona Doctors, LLC," *id.* ¶ 36(a); (4) Defendant Shaban "[f]ailed to observe corporate formalities, including maintaining separate finances for each entity, and commingled corporate and personal assets," *id.* ¶ 36(b); (5) Defendant Shaban "[g]rossly undercapitalized the entities," *id.* ¶ 36(c); and (6) "[p]erpetuated fraud or injustice by avoiding contractual obligations, including [Plaintiff's] severance and final wages," *id.* ¶ 36(d).

As a preliminary matter, allegations based on information and belief "veer away from supporting plausible inferences, and turn instead toward unsupportable conclusory talismanic statements." *Carter v. Va. Dep't of Game & Inland Fisheries*, 2018 WL 3614975, at *9 (E.D. Va. July 27, 2018). Moreover, aside from the specific allegations regarding the use of his personal address and the alleged fraud that forms the basis of this Complaint, the allegations as to Defendant

9

Shaban are a mere recital of factors often considered by courts in a veil piercing analysis—without any particular facts to render them plausible. *See, e.g.*, *DiMuroGinsberg, P.C. v. VLOX, LLC*, 2019 WL 3728254, at \*8 (E.D. Va. Aug. 7, 2019) ("In determining whether the corporation is the alter ego of its shareholders, the court will consider various factors, such as (1) whether corporate formalities have been disregarded, (2) whether corporate funds and assets have been extensively intermingled with personal assets, (3) inadequate initial capitalization, and (4) fraudulent use of the corporation to protect personal business from the claims of creditors." (quoting *Estate of Raleigh v. Mitchell*, 947 A.2d 464, 470-71 (D.C. 2008))); *Werner v. BN Media, LLC*, 477 F.Supp. 3d 452, 455 (E.D. Va. 2020) ("A threadbare recitation of the 'elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes.'" (quoting *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009))). And the Court finds the remaining non-conclusory allegations—without more—insufficient to state a claim against Defendant Shaban.[4]

Nonetheless, as with Defendant r80, Plaintiff now asserts additional allegations in Opposition. *See, e.g.*, Dkt. 31 at 6 ("Plaintiff alleges that Defendant Shaban owned and controlled R80, LLC—the entity that processed payroll and managed the financial operations for Persona Doctors—and that he personally directed payroll practices, decided when and how Plaintiff was paid, and commingled funds between entities to obscure responsibility for wage payments.").

---

[4] Notably, the Complaint does not allege that Defendant Shaban was actually a corporate officer or owner of Defendant Persona or any of the other Defendant entities, nor does the Complaint allege that Defendant Shaban exercised any control over Plaintiff's day-to-day employment, or had the power to hire, fire, or set wages and compensation for her. *See Zegarra v. Marco Polo, Inc.*, 2009 WL 143428, at \*2 (E.D. Va. Jan. 21, 2009) (holding that an individual corporate officer may be an "employer" under the FLSA and subject to liability in an individual capacity if that officer "acts as a supervisor with sufficient control over the conditions and terms of plaintiff's employment").

Again, although Plaintiff may not amend through Opposition, to the extent that Plaintiff can allege specific facts about the circumstances giving rise to these new assertions that would render her joint employment theory plausible, the Court will permit Plaintiff leave to amend.

## B.  VWPA (Counts III-VIII)

Both Defendant r80 and Defendant Shaban also move to dismiss the VWPA claims.  As to Defendant r80, for the same reasons articulated *supra*, Plaintiff again fails to state a claim for joint employer liability as to Defendant r80.  As for Defendant Shaban, it is well-settled that the VWPA does not provide for joint liability of corporate officers.  *See Hudson v. Dunn*, 2024 WL 2870845, at *11 (E.D. Va. Mar. 15, 2024).  Accordingly, Defendant Shaban also moves to dismiss these claims against him.  Dkt. 28 at 4-5.  In response, Plaintiff argues for veil piercing.  Dkt. 31 at 3-5.  But even if veil piercing can be applied to overcome the clear terms of the VWPA, a proposition for which Plaintiff has cited no supporting case law, for the reasons articulated *supra*, Plaintiff's allegations in this regard are nearly entirely conclusory, and otherwise insufficient to plausibly allege that such an extraordinary remedy is appropriate in this case.  *See O'Hazza v. Exec. Credit Corp.*, 246 Va. 111, 115 (1993) ("Ignoring the separate existence of a corporation and imposing personal liability on shareholders for debts of the corporation is an extraordinary act to be taken 'only when necessary to promote justice.'" (quoting *Cheatle v. Rudd's Swimming Pool Supply Co.,* 234 Va. 207, 212 (1987))).  Accordingly, the VWPA claims will also be dismissed—again with leave to amend with specific facts.

## C.  Fraud and Breach of Contract Claims (Counts IX, X, XI)

Both Defendants also move to dismiss Plaintiff's remaining claims for violation of 26 U.S.C. § 7473, breach of contract, and common law fraud.  For all of these claims, Plaintiff merely relies on group pleading and, for the reasons analyzed *supra*, has failed to plausibly connect

11

Defendant r80 or Defendant Shaban to the specific actions alleged that would support these theories or to otherwise plausibly allege that the corporate veil should be pierced in this case. *See, e.g.*, Dkt. 1 ¶ 98 ("Defendants willfully filed a fraudulent information report with regard to the amount of Social Security tax that was withheld and paid into the Social Security system on behalf of [Plaintiff]."); *id.* ¶ 105 ("Defendants breached [the Agreement] when they knowingly refused to pay [Plaintiff] her final month of wages, including PTO."); *id.* ¶ 111 ("Defendants made a false representation of material when they provided paystubs reflecting Social Security taxes were withheld from [Plaintiff's] paychecks to pay into the Social Security system."). Accordingly, Plaintiff fails to state a claim under the remaining counts as to Defendants r80 and Shaban, and these too will be dismissed.

## IV.  CONCLUSION

Accordingly, it is hereby

ORDERED that the Motions to Dismiss (Dkts. 27, 29) are GRANTED; and it is

FURTHER ORDERED that the Complaint (Dkt. 1) is DISMISSED WITHOUT PREJUDICE and with leave to amend as to Defendants r80, LLC and Kavan Shaban; and it is FURTHER ORDERED that, because Plaintiff has pleaded even fewer specific facts as to Defendants WBV and Shawn Shaban, the same analysis regarding pleading defects as to Defendants r80, LLC and Kavan Shaban also applies to Defendants WBV and Shawn Shaban, and the Motion for Default Judgment (Dkt. 39) is thus DENIED as to Defendants WBV and Shawn Shaban; and it is

FURTHER ORDERED that Plaintiff must file any Amended Complaint within FOURTEEN (14) DAYS of the entry of this Memorandum Opinion and Order. If Plaintiff fails

to file an Amended Complaint by that date, the Court will assume that Plaintiff is foregoing the

claims as to Defendants r80 and Kavan Shaban.

It is SO ORDERED.

Alexandria, Virginia
July 21, 2026

_____ /s/
Rossie D. Alston, Jr.
United States District Judge